Onto the fourth case of the day, Lexington Insurance against Hotai Insurance Company and others. Appeal number 18-1141. And we'll hear first from Mr. Sobchak. Shall I proceed, Your Honors? Wait just a moment. We traditionally lose our audience as we go forward over the morning. All right, go ahead. May it please the Court. Good morning, Your Honors. Good morning, Counsel. My name is Mark Sobchak. I'm here on behalf of Appalachian Lexington Insurance Company. This dispute arises from Lexington's attempts to recoup from Appalachian Zurich Insurance and Tyann Insurance monies that Lexington spent to defend and settle an underlying products liability lawsuit brought against their mutual insured Trek Bicycle Corporation. There are two principal issues on appeal. First, did the District Court err in dismissing the case for lack of personal jurisdiction over Appalachian? And second, can this Court affirm on the alternative basis that venue is improper in the Western District of Wisconsin? The District Court had personal jurisdiction, venue is proper, and Lexington respectfully requests that this Court reverse and remand. I'd first like to talk about the personal jurisdiction issue, and then I'd like to move on and speak about venue. Before I do so, would Your Honors like a brief recitation of the facts? Not for me. Thank you, Your Honors. There are three requirements for the exercise of specific personal jurisdiction. First, the defendant must purposely avail themselves of the privilege of conducting business in the forum. Second, the claims against them must arise out of those contacts, and then if those first two elements are established, the defendants must come forth with a compelling case that the exercise of personal jurisdiction over them or forcing them to litigate in the forum would violate traditional notions of fair play and substantial justice. With respect to purposeful availment, there are two reasons that Zurich and Tyann purposely availed themselves of Wisconsin forum. The first is that they undertook continuing obligations to Trek, a forum resident. Now, even with Zurich and Tyann's extensive discussion of the Walden case in their brief, or actually their reliance on it, not so much a discussion of it, Walden reiterated that continuing obligations to a forum resident can still constitute purposeful availment. And here, what Zurich and Tyann have argued is that they really didn't actually obligate themselves. In fact, it was a third party that did that, their insured giant and their respective insured's giant formula. But if you look at the Zurich policy, it requires Zurich's pre-approval or Zurich's approval before any additional insured can be added to the policy. It says prior agreed by Zurich. Is there a distinction between this case, where there's perhaps a continuing obligation to an insurer, I grant you that, but not continuing contact? Think about McGee. There you have continuing contact because premiums are being mailed back and forth. And we don't have any of that here. No, we don't. And to the extent that there's a distinction, I don't think that it should necessarily result in a finding of no purposeful availment. Zurich and Tyann marketed these policies. These policies contained coverage for, and I'll talk about this in a little bit, for worldwide claims. As part of the reason, I mean, giant and formula probably would not have purchased these claims, or I'm sorry, these policies had additional insured coverage not been available. So if you're getting to, I think what you're getting at is somewhat similar to what the district court said, which is almost a lessening of an additional insured relationship as compared to a named insured. But the continuing obligation, I think the district court called it contingent and probabilistic. This is insurance. Everything's contingent and probabilistic. Thank you. That is precisely it, Your Honor, which is that there is no obligation until there is a covered claim. Well, sure, but no, that's not actually what I was getting at. In McGee, there was more than one contact. It's more than just, hey, we insured someone. We gave someone a life insurance policy who lives in California. There was continued contact with California because the insured was communicating back and forth. And so what I'm getting at here is you have one contact, sure, but it's not the kind of continuing obligation. It's not clear to me that even if we call this a contact, that it's enough. Well, that raises, I think, my second point, which is the worldwide coverage territory, and it ties together. And I will, Your Honor, I'm not trying to avoid your question, but I will acknowledge that there is a distinction between we did not rely heavily on McGee and Herbreest. Right, because it doesn't help you very much. Thank you. It does not. But, you know, Zurich and Tyann, and there's a number of cases from around the country that have said this, which is that they marketed and sold these policies and promised to cover claims worldwide. By doing that, and I think the THAgriculture case from the Tenth Circuit sets forth the rationale well. By doing that, they made money, and they made money by availing themselves of the forum. Their policies were more marketable because they had broader coverage, and they could charge more because they had broader coverage. And that's exactly what Zurich and Tyann have done here. They agreed to provide coverage for worldwide claims. And, you know, Zurich and Tyann actually try to make a distinction between the duty to defend and the option to defend in the briefs with respect to their obligations. And the THAgriculture case actually rejects that very argument, which is that the worldwide coverage territory is tied to a duty rather than an option to defend. But it expressly rejects that. In either case, the worldwide coverage territory establishes purposeful availment. I mean, it's precisely what insurers contract to do. Do you see a distinction between saying, we'll cover an accident that happens anywhere, let's just not talk about the world, let's just talk about the United States. We'll cover an accident that happens anywhere in the United States, and we're in a relationship with you. I mean, what if my employer says, we will pay for you to stay at any, you know, Smith & Jones hotel that's located anywhere in the United States. And Smith & Jones is then notified, you know, that she doesn't have to pay, you know, Amy Barrett doesn't have to pay if she stays in one of your hotels. Does that mean that the hotel, just because it honors my ability to stay anywhere, it's the coverage area, has then submitted itself to personal jurisdiction in the state where I am. Let's imagine Smith & Jones has no hotel in that state. It just seems to me that there's a distinction between a coverage area identifying, you know, the limits of where accidents happen for purposes of liability being triggered and the kind of relationship with the insured, or the contacts with a specific state for purposes of the kind of claim you're asserting. If I understand your question, I think that the distinction is, or in this particular case, the 4th, the 8th, the 10th, and the D.C. circuits have focused on the economic benefit to the insurer from offering this worldwide coverage territory. And it's worth pointing out that this is not a random state. I mean, this is where Trek was located. This is their home state. What if Trek wasn't located there? What if Trek was located in California, but Trek wanted to sue them in Wisconsin, and the accident happened in Texas? Then I think there would be a much, I think that there would be a weaker case. The answer is no. No jurisdiction. No jurisdiction. Sorry. But why, actually, under your theory, I'm not sure I see why. Because you're resting the theory not on the fact that Trek was located in Wisconsin. You're resting your theory on the fact that they derived economic benefit from covering accidents that happened in any of the 50 states. So that really isn't dependent on where Trek is located, because you're distinguishing McGee, it sounds to me, like by saying, well, it's not really so much about the relationship between the insurer and the insured as it is about the economic benefit it could get for saying, yeah, we'll pay, we'll cover, no matter where the accident happens. So in that event, I don't see why it matters whether Trek's in Wisconsin or not. I guess this goes somewhat to foreseeability, in the sense that there's certain, Zurich and Tainan can certainly foresee, I think, that somebody that they insured pursuant to their policy, to whom they did not, to whom they failed to fulfill their obligations, at least according to R. Lexington's complaint, would sue them in the state where those obligations were to be carried out. And I think that that's the difference, Your Honor. What if Trek moved? And because Trek's relationship wasn't with these insurers directly, it was through the two Taiwanese companies, what if Trek moves, say, Trek moves to Florida, and the insurers are not on notice that Trek is no longer headquartered in Wisconsin? Can then they be sued in Florida, under your theory? I think that that starts to push the boundaries, no, because that's actually what's happened in, I believe it's the Hunter v. King case from the Ninth Circuit addressed a similar instance. And I think after the relationship is formed, a subsequent move by the insured, I think that's a very different situation. Well, it seems to me that you're flipping back and forth between theories, because if it's an economic benefit, it's really not dependent on where the insured is located. If it matters where the insured is located, it's more about the contacts or the relationships that the insurance companies have had with the insured in that particular location, and there are none here. I'm sorry, in Wisconsin? Right, except for the fact that they have this additional insured, naming Trek, there were no other contacts with Wisconsin. But I understood you to be saying, ah, but the thing that's really different here is that they get an economic benefit about saying, anywhere an accident happens, we'll insure you. That's one of the differences, but I think that you have to consider that in context of the ongoing obligations. I mean, they committed to insure Trek. They committed to that. And it's perfectly foreseeable and fair to make them account in Trek's home state for failing to fulfill those obligations. And I... Could I ask you about the venue-related issues here? Certainly. Because it frankly seems to me you've got a pretty good argument on personal jurisdiction based on, at least on the contract from the defendants. But usually that means you have to take the bidder with the suite, and that would include both the venue provision in Tyann and the arbitration provision with Zurich. Yes. Let's start with Tyann. Yes. How do you get out of that venue provision? Well, the first thing is we never knew about it. There is a... Well, tough. Look, you've got to rely on the contract to have any claim against these folks and to get jurisdiction over them. But to the extent that Lexington's claims are grounded in contribution among co-insurers, and Zurich and Tyann have not identified... Do you think you have a claim against them if you were not, if Trek had not been named as a co-insured? Would we have a claim against them? Yes. No. No, of course not. Okay. So you depend upon the contract. Yes. It implicates the contract. And I think that the Danaher case out of the Southern District of New York, which of course isn't binding but is instructive on this point, a suit from one co-insurer or a suit amongst co-insurers, it exploits the contractual relationship, but it's not so direct that Lexington should be bound by a forum. Why not? Because it is not... You depend upon that contract. And you want to pick and choose the provisions. Well, contribution would be based on equity. One of the elements of contribution would be proving that Zurich and Tyann owed an obligation. And that would be where the contract comes in. But the other elements, such as, you know, one party paying more than their fair share. Okay. Danaher is your answer. I think Danaher and the W.R. Grace case, yes. Okay. And then with respect to the arbitration provision in Zurich. Yes. Do you want to address that? Certainly. I think that there's two reasons that the arbitration provision doesn't apply. Obviously, Lexington is not a signatory. That's the same problem. Okay. I thought you were relying also on the specific terms of the arbitration clause. Yes. We certainly are, Your Honor. And that is that the Zurich provision only applies where liability is admitted. And the dispute is over damages. And despite their contentions in their brief, and despite some efforts to do that in the request for arbitration, they've never come out and said, sure, Trexan insured, we're reliable for this. They've never explicitly or expressly stated that. And there's really not much of a record in the district court on this issue, is there? No, there is not. Okay. And further, with respect to the venue issue, I'd like to briefly address the contention that Zurich and Tyann make that venue would just be improper in Wisconsin because none of the events giving rise to Lexington's claims occurred there. But the standard is not that a majority of the actions give rise, or the majority of actions giving rise to the claim occur in the venue. It's just a substantial portion. And here, it's clear that Zurich and Tyann have not argued that payment would not be to Trex in Wisconsin. And so I believe I am running out of time. We'll give you a minute for rebuttal. Thank you, Your Honor. So you're not defenseless as you listen to opposing counsel. So thank you very much. All right. Thank you, Mr. Sobchak. We'll first hear from Ms. Jansen. Good morning. My name is Kim Jansen. I'm here today on behalf of Hotai Insurance Company. Is that Zurich? Formerly known as Zurich Insurance Taiwan. I can refer to them as Zurich throughout if that's easier. Why don't you do that since the rest of the briefs and record did? Sure. Will do. So there are really three Supreme Court cases that sort of narrow or lay out the boundaries of this personal jurisdiction issue that we have before us. And that's the Jay McIntyre case, the Walden case, and the Bristol-Myers-Squibb case. In the past decade or so, the court has been pretty active in this area, and I think in this case has very helpfully laid out some pretty clear guidelines to us. In the Jay McIntyre case, the court made it clear that it is the defendant's actions, not their expectations, that control whether or not they're subject to personal jurisdiction. In Walden, the court made clear that it is the defendant's contact with the forum itself and not merely its relationship with a foreign resident that controls, that the relationship with a plaintiff or third party in state alone is not sufficient to subject a defendant to personal jurisdiction. Bristol-Myers-Squibb echoed that sentiment and added the fact that for there to be personal jurisdiction, the plaintiff's claims must arise from, they must have some affiliation with the defendant's actual contacts with the forum state. Not the contacts with the forum resident, but with the forum state. Some sort of activity or occurrence within the forum state. I would have thought you would have discussed, included Burger King against Rudziewicz in your list, where you have continuing contractual obligations to a customer, or in this case, co-insured in the forum. I think Walden and McIntyre and Bristol-Myers-Squibb do continue sort of and expand on the much older and well-established. Which of those involved contracts? They did not. Any of them? No, they did not. No. But Burger King did. Burger King did. Burger King is the case on continued contractual obligations. Correct. Which is what we have here. Right. And in discussing Burger King, the Walden court made clear that when we're talking about those continuing obligations, we're talking about continuing activity. I think they said. So are you saying there's a special rule implicit in Walden for insurance cases? No, I'm not. Because it's contingent and probabilistic? No. I'm saying that in Walden, they're saying that the mere fact that there's some continuing relationship, whether it's a contractual relationship or otherwise, is not enough. It's very clear. A relationship is not enough. The fact that that relationship somehow continues over time doesn't somehow make the mere relationship with a forum resident a sufficient jurisdictional contact. In Burger King, when it's talking about continuing obligations, and I think Judge Barrett was alluding to this in some of her questions, they're making the distinction between merely an obligation to a forum resident and continuing activity, continuing contacts within the forum state. So, yeah. In Burger King. It sounds like what you're saying is as long as there's no claim made, there's no ongoing activity, particularly when you've got a co-insured here and they're not paying the premiums the folks in Taiwan are. Is that what you're saying? I'm sorry. Can you restate your question? I'm not sure I understood. Well, let me ask this way. Does it matter that TREC is a co-insured rather than the premium paying insured in this case? It matters to the extent that when you're looking at purposeful availment, you're looking at the entire contractual relationship. So the negotiations, the anticipated obligations, where it's executed, things like that. TREC's not involved in any of that. So it sounds like you are trying to distinguish, then, between co-insureds and insureds. Yeah, an additional insured in this case. The contract is not between TREC and Zurich. No, but you obviously agreed to extend benefits to TREC, correct? Correct. They are an additional insured for claims arising out of the insureds. Anywhere in the world. Anywhere in the world. Do I understand correctly? There were never any mailings between Zurich and TREC? None that I am aware of. None that have no premiums paid from there. So there was a continuing relationship, but there was not the kind of communication, say, that we see in cases like McGee or in Burger King. Exactly, exactly. There's a relationship on paper, to the extent that they are named as an additional insured under the giant policy, but there's no interaction whatsoever. So your bottom line answer to Judge Hamilton is, yes, it matters here that this was an additional insured as opposed to the primary insured because the contacts between the two were not the same. Exactly. So claims can be made, but they can't be hailed into court in Wisconsin to assert them. I'm sorry, say that last part again. So claims can be made, clearly, because TREC is an additional insured. Sure. So you're simply saying claims can be asserted, but Zurich can't be hailed into Wisconsin to defend them. Nobody's attempted to hail Zurich into Wisconsin to defend the specific claims in this case, which is the next level of attenuation, right? This is not TREC claiming a breach of contract action, in which case they might have a slightly better position. But this is Lexington saying that we should reimburse Lexington based on this attenuated sort of incidental contact with TREC that is incidental to our primary relationship with TREC. So they're simply stepping into the shoes of their insured TREC, right? Well, they're not stepping in. This is not an assignment. It's not a subrogation. It's not a subrogation. They're bringing their own independent action, which is precisely why they insist that they can't be bound by the arbitration provision. Well, that's a different issue. Can I ask you, Ms. Jansen, you all argue that TREC was included as an additional insured based on business decisions made by Giant and Formula, not based on any activity by defendants purposefully directed toward Wisconsin's economy or its residents. Correct. This sounds as if you all aren't parties to your own contract. You all agreed to name TREC as an additional insured, correct? The primary policy agrees to extend additional insured coverage to the vendors of our insured Giant. TREC was ultimately listed among the vendors. You mean their customers, not vendors, right? No, it's a vendor endorsement. So Giant, as I understand it, manufactures the bicycles, ships them out to TREC. TREC is the vendor who then distributes them, I guess, throughout the world or throughout the United States. I don't know. But to Judge Hamilton's point, for a price, right? The more additional insureds you agree to cover, presumably the more money the policy is going to cost Giant or whoever. I don't know that that's the case. We don't have a lot of detail about specific negotiations in this case. But they could not be added to this policy without your consent, could they? There is a provision that requires the approval. I suspect that that would require some level of good faith. But there's also no evidence in the record that Zurich Hotai had any knowledge that TREC was a Wisconsin resident. Why should that matter? Like if they can close their eyes to the location of the additional insureds, they're somehow excused from needing to recognize they've taken on those obligations? It matters because it's clear in the wake of the most recent United States Supreme Court decision that foreseeability, essentially this is a stream of commerce type argument. It doesn't matter that they can foresee. It's a specific, it's an insurance-based theory, that however contingent and probabilistic it is, if you agree to take money for insuring risks of somebody in another jurisdiction, that establishes an ongoing contractual set of obligations. And it shouldn't surprise anybody that you're subject to jurisdiction there. There may be issues about venue, but those can be sorted out separately. I see I'm dipping into, may I conclude? You've got a minute to go. Okay. So I guess two responses to that. First, personal jurisdiction cannot be based simply on passively accepting a contact that Giant has its list of vendors that it wants to add to. Nobody's arguing it's passive. I'm arguing that it's passive. Okay. Passive even though you agreed, your client agreed to name TREC as an insured. Our client agreed to insure Giant's vendors. And TREC by name, correct? It's in the policy, right? We approved the inclusion. Okay. That's passive in your view? Yes. We didn't reach out. We didn't mark it to Wisconsin. We didn't say, boy, oh, boy, we want TREC to be an additional insured under this contract. I don't think Zerocotai had any interest in which other than, of course, not wanting an additional insured who might be at increased risk. But they weren't out there trying to market to particular additional insureds. They were trying to market a policy to Giant, a Taiwanese corporation. And I see I've exceeded my time. All right. Thank you very much, Ms. Jansen. And on behalf of Tyann, Mr. Lieb. Yes, thank you. I'm Samuel Lieb. I represent Tyann. May it please the Court. Just to follow up, Your Honor had referenced the Burger King case as a contract case. And I think the distinction that exists in some of the line of cases dealing with contract cases that doesn't exist in this case is essentially the reach out. There's no reach out. And even when you look through the tort cases, the tort cases that have found jurisdictions, that have found personal jurisdiction, they're trying to measure the context of this relationship, whether it's e-mails, whether it's the felon case dealing with the aborted condominium purchase in Mexico. There's this reaching out. There's an overt effort. Do you agree that your client added TREC as a coinsured on its policy? As an additional insured, yes, I do. Do you think it makes a difference whether they're the premium paying insured or an additional insured? Well, I think it makes a difference for purposes of jurisdiction. Because the case law almost uniformly goes through the exercise of evaluating what is the nature of the relationship. And as has been held previously, the primary concern is the burden on the defendant to be drawn into this jurisdiction. You all agreed to cover worldwide obligations, right? Yes, but it doesn't mean to covering worldwide obligations is not tantamount to a consent to worldwide jurisdiction. But you also, in terms of burden, indicated that under the policy, you have the right to control the defense of your named insureds, the main insureds, correct? Yes. So that ordinarily contemplates the notion of defending them where they get sued worldwide, right? Well, I think all insurance policies run the risk of getting sued wherever they have coverage. Yeah. Absolutely. What's unfair about that? You guys are in this business of covering people who get sued worldwide. It is the issue of personal jurisdiction in a forum where there is essentially no contact. And I'm saying essentially no contact because clearly they add as an additional insured a corporation that was domiciled in Wisconsin. But this is about as close as you get to existential personal jurisdiction. Looking through the case law and especially some of the more recent cases. What's existential personal jurisdiction? Well, it's the idea that, and this is Lexington's position essentially, and Your Honor noted they sort of want it both ways. They want the bitter. They don't want the bitter. They want the sweet. Let's separate that issue, okay? Let's focus on personal jurisdiction right now where you agree to these ongoing obligations to a forum resident and are being paid for it. But even the ongoing obligations, these continuing obligations that Lexington is emphasizing, even when you look at the Burger King case, they are looking to measure what is the reach out. Is it simply just some ongoing relationship, some temporal relationship? And as my counsel indicated, she referred to it. So we should distinguish between franchise relationships as in Burger King and contingent and probabilistic insurance coverage? I agree with the court that all insurance coverage is contingent and probabilistic. But the case law looks at sort of things like e-mails or are they paying premiums? Are there payments being made to TREC in Wisconsin? Those types of characteristics of relationships are what the courts have looked at to determine whether or not there has been some purposeful availment or there's been a reach out or trying to avail oneselves of the benefit of that jurisdiction. There's just, and I say existential because there's none of this in this case. And essentially what Lexington is saying, we insure TREC, you had TREC as an additional insured, and therefore there's jurisdiction. So would there be personal jurisdiction in any state in the United States? Well, under their theory, under Lexington's theory, there is no stopping. Under your theory, how about Texas? Pardon? How about Texas in this case? Yes. They should have sued you in Texas. I think if there's a suit in Texas, at least there's a nexus to the underlying action or event. Really, so you would say there's personal jurisdiction in Texas? Pardon? You would say there's personal jurisdiction in Texas? Well, yes, but I'm not talking about the- Okay, well now I'm confused about your theory. Yeah. What's your connection to Texas? Well, at least- What would you have done to- Yeah. I mean, I get you're saying like, okay, well, the accident happened in Texas and that's what we agreed to cover. Yeah. And that's enough under your theory? Well, I don't think it's enough because- But you just said it was. Well, because I think there's somewhat more to that. And I'm not an expert on Texas law, but if Texas law had a statute like Wisconsin, and that they had a long-arm statute that said if you insure anybody, even a third party, that that could be the basis for jurisdiction. Well, no, no, no, no, because the question really here is what's consistent with the due process clause? And if it's not, and I understood your position to be that it's not consistent with the due process clause for your client to be hailed into court in Wisconsin. And Texas can't, by statute, say we're going to authorize more personal jurisdiction than the due process clause would allow. Well- So it doesn't really matter. I mean, if we assume that, let's assume that Texas' personal jurisdiction statute is coextensive with the due process clause as Wisconsin's is here. Would there be personal jurisdiction in Texas? I think it's a better argument for Lexington. It's a better argument for Lexington to say Texas, because then it's somewhat analogous to the auto insurance cases. The line of cases dealing with that. And I'm saying this, obviously, not factoring our form selection clause that we feel is appropriate. Yes, yes, I didn't mind. But I think you have a better argument because everything happened in Texas- Well, it sounds to me, then, the argument you're shifting to now is not so much that there weren't minimum contacts, but more that this didn't satisfy the requirement that the claim arise out of those contacts. Because in Texas, you could say it arose out of the accident for which they're seeking coverage. At least they could make that argument. That would be a concession, then, that there were minimum contacts. And that would be saying the reason there's no personal jurisdiction is because the action doesn't arise out of those contacts. Well, I think the additional insured status of TREC, the argument can be made that that's a minimum contact. It's just not sufficient. It is not a sufficient minimum contact to allow for personal jurisdiction. That's our argument. I get that, I just don't understand why you made the concession on the Texas point. Well, I think it's a better argument for Lexington because that's where the accident happened. That's where everything happened, really. And that's where TREC involved their bicycles. And that's where Formula and Buptyk were somewhat involved. And the reason why I refer to it somewhat as existential personal jurisdiction because if you look through all of the various tests that have been promulgated by the various reviewing courts, as Judge Peterson found in the district court, Lexington comes up short. They come up short because there really is very, very little. And it is just simply this very, very thin thread. And it's, you know, I characterize it as a... Anything further? No, Your Honor. Thank you very much. Thank you, sir. Take two minutes rebuttal if you need them, Mr. Sobchack. Certainly, Your Honor. Thank you. I think Your Honor was precisely correct in focusing on Burger King. And I think that the issue of what Burger King says is that essentially the contract is sort of an intermediate step to a service or an ancillary to the purpose of the contract, what the contract is for, a sale of good perhaps. Pardon me. A sale of good perhaps or a service. And here you don't have the kind of ancillary contact simply because it's not necessary. Zerk and Tyant promised insurance. The insurance was there. The premiums were not paid from Wisconsin. And therefore, there was not a necessity for, unless a claim arose, for further communications. So I think that, you know, to the extent that Zurich relies on Walden and Bristol Myers, I mean, I don't want to minimize Walden. And this Court has stated before that Walden certainly is instructive case law from the United States Supreme Court. But it's a very different case. And it absolutely reaffirms Burger King and does not limit it. It clearly, in its discussion of the law, cites Burger King for a number of propositions that it later applies to a distinct context. Unless Your Honors have any questions. Thank you very much. Thanks to all counsel. The case is taken under advisement.